## LANDAU v. HAX et al.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1910.)

Appeal from Special Term, Monroe County.

Suit to attack the validity of a will by Louisa K. Landau against Emma Hax individually and as executrix and others. Judgment for plaintiff, and defendants appeal. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Westbury & Fries and George D. Forsyth, for appellants.

James G. Greene and Cogswell Bentley, for respondent.

PER CURIAM. Judgment and order reversed and new trial ordered, with costs to appellants to abide event. Held, that the finding of the jury is contrary to and against the weight of the evidence. All concur, except WILLIAMS, J., who dissents in a memorandum.

WILLIAMS, J. (dissenting). The judgment and order should be affirmed, with costs.

The action was brought under section 2653a of the Code of Civil Procedure to determine the invalidity of the will of Gertrude B. Mills and of the probate thereof by the surrogate of Monroe county. The jury rendered a verdict in favor of the plaintiff. The attack upon the will was for undue influence. The testatrix left at her death four children, Louisa, the plaintiff, Philip, William, and Emma, defendants. Her first husband and the father of her children, Mr. Hax, died many years before her death. She married a second husband, William Mills, in 1880, but separated from him in 1891. The will was made in 1898, when she was 72 years old, and she died in 1906, at the age of 80 years. She left real property, the place where she· lived, worth $4,000, and about $2,000 of· personal property. In 1886, when she was 60 years old, she made a will whereby after the payment of debts, funeral expenses, and expenses of administration she gave her son William her interest in the hack and team owned by herself and husband jointly, and all the rest of her property to her two daughters Emma and Louisa equally, and made Emma her executor. This will remained until the will in question was made in 1898. By this will, after the payment of debts, etc., she gave Emma all her property, subject to the payment to Louisa of $1,000 and to William not to exceed $700, which amounts she made charges upon the property; and, in case Emma did not survive her, she gave the share devised to her to Philip. She made Emma executrix; and, in case she should not survive the testator, she made Philip executor, and revoked all former wills. The difference in the two wills is therefore that by the first one

she gave the most of her property to Emma and Louisa equally and by the second she gave it to Emma alone, charged with the payment to Louisa of $1,000 and to William of not to exceed $700, and, in case she died before the testatrix, her share was given to Philip. Louisa objected to this change and brought this action to invalidate the second will.

Emma and Louisa shared equally under the first will. Under the second one Emma got about five-sixths of the property and Louisa about one-sixth. There was no obligation on Emma's part to pay William any part of the $700. She could do as she liked about it. The case was submitted to the jury fairly, the law was correctly stated, but there was no discussion by the court of the facts. The claim is that there was no evidence sufficient to authorize the finding by the jury of undue influence. The evidence was largely circumstantial. Many witnesses were sworn and gave evidence as to the relations of the parties and the treatment of the testatrix by the various children. I don't desire to enter upon any analysis of the evidence, or discussion as to its effect in establishing the fact found by the jury. Emma was the older of the two daughters, was unmarried, had accumulated some property, was in easy circumstances financially. Louisa was married and had several children. Her husband was not a very good man while living, was addicted to drinking, and she has had a hard life, and has been in straitened circumstances. The first will undoubtedly was regarded by the jury as more just and equitable than the last one, and this consideration very likely had more or less influence in bringing about the verdict rendered. I think the case is a close one, but the jury heard the evidence, saw the witnesses, and I am not inclined to vote for a reversal of the judgment and order. It could only result in a retrial, with the probabilities of a like result again. The amount of the property involved is not large, and continued litigation would use up the whole in expenses and lawyers' fees. The testatrix was old, was under the immediate influence of Emma, and the second will was procured to be made without Louisa's knowledge. She knew what the former will was, and did not know of the second will until after her mother had died, and even then its contents were for some time kept a secret from her. Under all the circumstances, it is no wonder that the jury sympathized with her and rendered the verdict they did. There was evidence which required the case to be submitted to them. A reversal could only be based upon the weight of evidence, and I think we better leave the matter as it is.

No one concurs. Reversed as contrary to evidence.